Prabhakar **GUNIGANTI,**
**M.D., Appellant,**

v.

Laxman **KALVAKUNTLA, M.D.,** Sarma
S. **Challa, M.D.,** and Bhagvan R.
**Malladi, M.D., Appellees.**

No. 14–10–00300–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 28, 2011.

---

William N. Pedersen Jr., Nacogdoches, Anjali Nigam, Houston, for appellant.

Thomas Ernest Freeman, Houston, for appellees.

Panel consists of Justices BROWN, BOYCE, and JAMISON.

## OPINION

MARTHA HILL JAMISON, Justice.

Seeking to collect the balance due on a promissory note (Note) and to foreclose on land securing the Note, appellant Prabhakar Guniganti, M.D., sued a limited partnership of which he, and appellees Laxman

Kalvakuntla, M.D., Sarma S. Challa, M.D., and Bhagvan R. Malladi, M.D., were partners. Appellees, who with Guniganti were guarantors of the Note, intervened, arguing limitations barred Guniganti's claims. The trial court granted appellees' motion for partial summary judgment on the ground of limitations and subsequently signed a final declaratory judgment by which the court decreed limitations barred enforcement of the promissory note and the deed of trust and awarded appellees attorneys' fees. In three issues, Guniganti argues the trial court erred in (1) permitting appellees to intervene, (2) holding the Note was not a negotiable instrument and his claims were therefore barred by a four-year statute of limitations period, and (3) rendering an impermissible declaratory judgment. We affirm.

## BACKGROUND

Guniganti and appellees were limited partners in GCKM (the partnership), which acquired acreage in Harris County for the purpose of developing the land as a residential subdivision.[1] On July 12, 2000, the partnership executed the Note payable to OmniBank, N.A., and secured by a Deed of Trust to the acreage. The original principal amount of the note was $2,948,523.45 "or so much thereof as is advanced and outstanding from time to time. . . ." The Note also provided, "NOT ALL of the principal amount of this Note has been advanced on the date hereof. Additional advances will be made in accordance with the terms and conditions of the Loan Agreement, reference to same being here made for all purposes." Guniganti and

appellees executed personal guaranties of the Note.

In June 2002, the partnership and the guarantors were in default on the Note, and the acreage was posted for foreclosure. In August 2002, the partnership and OmniBank executed a Modification of the Note and Deed of Trust (Modification), effective June 12, 2002. The Modification recited that the principal balance remaining was $1,439,491.21 and the final maturity date was December 12, 2002. The Modification further provided, "except as to such changes made herein, the terms and provisions of the Note as modified hereby shall be brought forward and remain in all respects unchanged. . . ." Finally, the Modification states, "If any inconsistency exists between this [Modification] and the terms of the Note and/or Security Documents, this [Modification] shall control and the Note and Security Documents shall be construed accordingly."

The Note again went into default. By a Transfer of Note and Lien (Transfer) dated June 30, 2003, Guniganti and appellees purchased the Note and Deed of Trust from OmniBank. By the terms of the Transfer, Guniganti obtained a 40% undivided interest in the Note and Deed of Trust, and appellees each obtained a 20% undivided interest.[2]

On November 2, 2007, Guniganti sued the partnership. He sought "damages in the amount of 40% of the unpaid balance due on the Note and Modification" and "judicial foreclosure of the Deed of Trust and order of sale." The partnership answered, alleging in part that limitations barred Guniganti's claims.

1. GCKM was originally known as Holley–Guniganti Kings Lake Estates, Ltd. Although the limited partnership documents are not part of the appellate record, the parties do not dispute the facts surrounding formation of the

limited partnership or its purpose in acquiring the acreage.

2. There is no endorsement on the face of the Modification.

Appellees filed a plea in intervention.[3] They alleged that, "[w]ithin the meaning of Rule 39 Texas Rules of Civil Procedure, [they were] indispensable parties to the prosecution of the claims set forth by Guniganti in this litigation." They argued that Guniganti lacked standing to enforce the "Note and Deed of Trust, Security Agreement and Financing Statement" without their consent and that the four-year statute of limitations set forth in Texas Civil Practice and Remedies Code sections 16.004 and 16.035 barred recovery on the Note and foreclosure under the Deed of Trust, respectively. They requested that Guniganti take nothing on his action against the partnership, that the court enter a declaratory judgment that the "Note and Deed of Trust, Security Agreement and Financing Statement are barred by the applicable statutes of limitations," and that the court award appellees their costs and attorneys' fees.

Guniganti filed a motion to strike the intervention, which the trial court denied.[4] Appellees then filed a motion for partial summary judgment on the following grounds: "(1) enforcement of the Note is barred by the applicable statutes of limitations; (2) foreclosure of the Deed of Trust is barred by the applicable statutes of limitations; and (3) because Guniganti is not the owner of the Note and Deed of Trust, he may not enforce either of them." They argued the four-year statute of limitations for a contractual debt, rather than the six-year statute of limitations for a negotiable instrument, applied to the Note because the Note did not contain an unconditional promise to pay a fixed amount of money. In so arguing, appellees observed that the Note extended a line of credit and, furthermore, it was necessary to look to other instruments to understand the rights and obligations under the Note.

The trial court granted partial summary judgment and ordered Guniganti's claims on the Note dismissed with prejudice.[5] The court stated that "[f]or the reasons stated in the Motion for Partial Summary Judgment," neither the Note alone, nor the Modification alone, nor the Note as amended by the Modification, were negotiable instruments, and therefore, the four-year statute of limitations applied. The order on the partial summary judgment did not dispose of appellees' claims for declaratory relief.

Following an evidentiary hearing on attorneys' fees, the trial court rendered a final judgment. After referring to its previous order granting partial summary judgment, the court decreed enforcement of the Note and the Deed of Trust, subsequently modified, was barred by limitations. The court further ordered attorneys' fees against Guniganti in the amount of $45,858.50 plus post-judgment interest.

### DISCUSSION

### I. Propriety of the Intervention

█ In his first issue, Guniganti argues the trial erred in allowing appellees

---

3. Appellees asserted the plea as "parties defendant," but set forth an affirmative claim for declaratory judgment as well as claiming the defense of limitations.

4. Guniganti's First Amended Original Petition and Response to Plea in Intervention, filed after the trial court granted partial summary judgment, is part of the appellate record. His motion to strike the intervention is not.

5. As recited in the order granting the motion for partial summary judgment, Guniganti represented in his brief and in open court that he had abandoned his claim for foreclosure. In the partial summary judgment order, the court ordered his claim for foreclosure on the Note and Deed of Trust abandoned. Guniganti's first amended petition, filed a week after the partial summary judgment order, contains only a claim for damages for 40% of the unpaid balance on the Note.

to intervene because they had no standing in the matter. "Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." Tex.R. Civ. P. 60. The trial court has broad discretion in determining whether to strike an intervention. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 657 (Tex.1990); *Jabri v. Alsayyed,* 145 S.W.3d 660, 671 (Tex.App.-Houston [14th Dist.] 2004, no pet.) After a party files a motion to strike, the burden shifts to the intervenor to show a justiciable interest in the lawsuit. *Jabri,* 145 S.W.3d at 672 (citing *Mendez v. Brewer,* 626 S.W.2d 498, 499 (Tex.1982)).

 The interest the intervenor asserts may be legal or equitable in nature. *Mendez,* 626 S.W.2d at 499; *Jabri,* 145 S.W.3d at 672. A party has a justiciable interest in a lawsuit, and thus a right to intervene, when his interests will be affected by the litigation. *Jabri,* 145 S.W.3d at 672. "[U]nder Rule 60, a person or entity has the right to intervene if the intervenor could have brought the same action, or any part thereof, in his own name, or, if the action had been brought against him, he would be able to defeat recovery, or some part thereof." *Guar. Fed.,* 793 S.W.2d at 657. It is an abuse of discretion to strike a plea in intervention if (1) the intervenor meets this test, (2) the intervention will not complicate the case by an excessive multiplication of the issues, and (3) the intervention is almost essential to effectively protect the intervenor's interest. *Id.*

Neither Guniganti's motion to strike, nor appellees' response, nor a reporter's rec-

ord of any hearing thereon are part of the appellate record.[6] We may therefore assume any evidence before the trial court on the issue of the intervention was adequate to support the trial court's decision. *See City of Houston v. Woods,* 138 S.W.3d 574, 580 (Tex.App.-Houston [14th Dist.] 2004, no pet.) ("The party complaining of an abuse of discretion bears the burden of bringing forth the record showing such abuse; in the absence of the record, the reviewing court must assume the evidence before the trial court was adequate to support the decision.").

In relation to the propriety of the intervention, the record before this court shows that appellees collectively owned a 60% undivided interest in the Note and Deed of Trust, with Guniganti owning the remaining 40%. It is undisputed that the intervenors were limited partners in the partnership that made the Note, as well as personal guarantors. At the time the trial court denied Guniganti's motion to strike the intervention, Guniganti still was asserting a claim for foreclosure. Guniganti's claims necessarily implicated the ongoing interests of appellees.

For the foregoing reasons, we cannot conclude the trial court abused its discretion in denying Guniganti's motion to strike appellees' plea in intervention. Accordingly, we overrule Guniganti's first issue.

## II. Propriety of Four–Year Limitations Period

 In issue two, Guniganti argues the trial court erred in holding that limitations

---

6. Appellees' plea in intervention and motion for partial summary judgment also were not part of the appellate record initially, but were merely included in the appendix to Guniganti's brief. We may not consider a document attached as an appendix to a brief and must consider a case based upon the record filed. *Nabelek v. Dist. Att'y of Harris County,* 290

S.W.3d 222, 232 n. 11 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). Both Guniganti and appellees cited to these appendix documents. On this court's order, the clerk of the district court supplemented the appellate record with the plea in intervention and motion for partial summary judgment. *See* Tex.R.App. P. 34.5(c)(1).

barred his claim. Guniganti does not dispute that his cause of action for breach of the Note accrued on December 12, 2002, when the Note, as modified, was not paid at maturity. *See G & R Inv. v. Nance,* 683 S.W.2d 727, 728 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.).

Guniganti filed suit November 2, 2007. Thus, if Guniganti's suit is one on a contractual debt and governed by the four-year statute of limitations, it is barred. *See* Tex. Civ. Prac. & Rem.Code § 16.004(a)(3) (setting forth suit on a debt as subject to four-year limitations period); *Diversified Fin. Sys., Inc. v. Hill, Heard, O'Neal, Gilstrap, & Goetz, P.C.,* 99 S.W.3d 349, 359 (Tex.App.-Fort Worth 2003, no pet.) ("Generally, a suit on a note must be filed within four years from the date the cause of action accrues."). Guniganti, however, argues the Note is a negotiable instrument under the Uniform Commercial Code and a six-year limitation period applies to his suit. *See* Tex. Bus. & Com. Code § 3.118(a) ("[A]n action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."). The negotiability of an instrument is a question of law. *FFP Mktg. Co., Inc. v. Long Lane Master Trust IV,* 169 S.W.3d 402, 407 (Tex.App.-Fort Worth 2005, no pet.).

Subject to exceptions not relevant here, "'negotiable instrument' means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order...." Tex. Bus. & Com.Code § 3.104(a). Appellees argue the Note, as modified, does not qualify as a negotiable instrument because it is not for a fixed amount of money and does not constitute an unconditional promise.

We consider first whether the Note, considered together with the Modification, constitutes an unconditional promise to pay.[7] Because we conclude the Note does not constitute an unconditional promise, we need not consider whether the Note is for a fixed amount of money.

Uniform Commercial Code section 3.106(a), which defines an unconditional promise or order, provides in relevant part:

> [F]or the purposes of Section 3.104(a), a promise or order is unconditional unless it states (i) an express condition to payment, (ii) that the promise or order is subject to or governed by another record, or (iii) that rights or obligations with respect to the promise or order are stated in another record.

*Id.* § 3.106(a).

The comments to section 3.106 further explain that a promissory note is not a negotiable instrument if it contains a state-

---

**7.** We read the Note together with the Modification and the Transfer. *See* Tex. Bus. & Com.Code § 3.117 (regarding other agreements affecting instrument); *CA Partners v. Spears,* 274 S.W.3d 51, 66 n. 9 (Tex.Civ.App.-Houston [14th Dist.] 2008, pet. denied) ("The general rule is that separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together."); *Mann v. Perry,* 486 S.W.2d 853, 859 (Tex.Civ.App.-Houston [14th Dist.] 1972, no writ). That we read them together does not, however, mean that we consider them a single instrument. There is nothing to indicate the Modification was affixed to the Note, and Omni Bank's endorsement to Guniganti and appellees appears only on the Note. *See Bankers Trust (Delaware) v. 236 Beltway Inv.,* 865 F.Supp. 1186, 1192 (E.D.Va.1994) (mem. op.) (refusing to incorporate even an affixed allonge— which eliminated a variable rate interest in favor of a fixed rate—into a note in order to furnish negotiability).

ment indicating that the rights and obligations of the parties with respect to the note are stated in another agreement. *Id.* § 3.106 cmt. 1.[8] "The rationale [for precluding reference to other documents] is that the holder of a negotiable instrument should not be required to examine another document to determine rights with respect to payment." *Id.*

Nevertheless, subsection (a) also provides, "A reference to another record does not of itself make the promise or order conditional." *Id.* § 3.106(a). Additionally, as set forth in subsection (b), "A promise or order is not made conditional (i) by a reference to another record for a statement of rights with respect to collateral, prepayment, or acceleration, or (ii) because payment is limited to resort to a particular fund or source." *Id.* § 3.106(b).

In the present case, the Modification contains references to the Deed of Trust, the Loan Agreement, the Collateral Assignment of Deposit Accounts, the Guaranty Agreements executed by Guniganti and appellees,[9] the "Stated Rate," [10] the "Maximum Rate" [11] and the Note. The Note contains references to the Guaranty Agreements executed by Guniganti and appellees, the Deed of Trust and the Loan Agreements.

We assume, without deciding, that the Modification's references to the Loan Agreement, Deed of Trust, Collateral Assignment and Guaranty Agreements and the Note's references to the Guaranty Agreements and the Deed of Trust are

references to statements of rights regarding collateral and do not defeat negotiability. *See id.* § 3.106(b)(i); *see also Cont'l Nat'l Bank of Fort Worth v. Conner,* 147 Tex. 218, 214 S.W.2d 928, 931 (1948) (indicating mere statement regarding other documents or reference to security given for note will not render note non-negotiable). We also assume, without deciding, that the Modification's references to interest rates (requiring one to consult another record to determine same) do not defeat negotiability. *See* Tex. Bus. & Com.Code § 3.112(b); *see also* Dale A. Whitman, *How Negotiability Has Fouled Up the Secondary Mortgage Market, and What to Do About It,* 37 Pepp. L.Rev. 737, 748 (2010) (interpreting parallel UCC section).

We conclude, however, that the Note's references to the Loan Agreement rendered the Note non-negotiable, a condition which the Modification did not cure. The Note provided, *inter alia:*

> NOT ALL of the principal amount of this Note has been advanced on the date hereof. Additional advances will be made ***in accordance with the terms and conditions of the Loan Agreement, reference to same being here made for all purposes.*** Interest shall accrue only on funds from date of advancement. A default under said Loan Agreement will constitute a default hereunder.[12]

The preceding language is more than a "mere statement" referring to the Loan Agreement. *See Conner,* 214 S.W.2d at

---

8. Although the official UCC comments following the code provisions are not law, they are persuasive authority concerning interpretation of the statutory language. *Fetter v. Wells Fargo Bank Texas, N.A.,* 110 S.W.3d 683, 687 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

9. The preceding were all securing the Modification.

10. The "Stated Rate" was defined as a floating interest rate equal to 1.5% "in excess of the Prime Interest Rate," meaning the prime interest rate of Bank One Texas.

11. The "Maximum Rate" was defined as "the highest rate of interest permitted by applicable law."

12. Emphasis added.

931. This language burdened the Note with the conditions of the Loan Agreement. *See id.* Thus, the Note did not contain an unconditional promise to pay and was not a negotiable instrument. *See FFP Mktg.,* 169 S.W.3d at 408 (holding notes at issue failed requirement for unconditional promise because they incorporated by reference the terms of other documents); *see also Mitchell v. Riverside Nat'l Bank,* 613 S.W.2d 802, 803 (Tex.Civ. App.-Houston [14th Dist.] 1981, writ ref'd, n.r.e.) (holding language " 'is subject to and governed by said contract which is hereby expressly referred to, incorporated herein and made a part hereof . . . .' " rendered note non-negotiable).[13]

For similar reasons, we conclude the Modification did not constitute an unconditional promise and, therefore, was not a negotiable instrument. The Modification expressly provided, "It is understood and agreed that except as to such changes made herein, the terms and provisions of the Note as modified hereby shall be brought forward and remain in all respects unchanged. . . ." It further provided, "The provisions of the Note and/or Security Documents shall continue in full force and effect. Obligors acknowledge and reaffirm Obligors' respective liability to Lender under the Note and/or Security Documents."

It is irrelevant whether any condition to payment is or is not stated in the provisions of the Note that apply to the Modification. *See* Tex. Bus. & Com.Code § 3.106 cmt. 1. Just as the Note was burdened by the Loan Agreement, the Modification was burdened by the Note and therefore was not negotiable. *See FFP Mktg.,* 169 S.W.3d at 408; *see also Dasma Invs. LLC v. Realty Assocs. Fund*

*III, L.P.,* 459 F.Supp.2d 1294, 1302 (S.D.Fla.2006) ("[The modification] cannot stand alone as a negotiable instrument, as it incorporates and maintains in full force and effect all of the non-modified provisions of the original promissory note. In other words, the [modification] is dependent on the . . . note."); *cf. Burns v. Resolution Trust Corp.,* 880 S.W.2d 149, 153 (Tex.App.-Houston [14th Dist.] 1994, no writ) (observing, in situation where notes underlying assumption and modification agreements were negotiable, that, under predecessor to present section 3.117, court looks to the terms of a note for satisfaction of negotiability requirements).

Guniganti also argues the trial court granted partial summary judgment on a ground appellees did not raise. *See Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex.1993) ("[T]he language [of Rule 166a(c) ] is to unequivocally restrict the trial court's ruling to issues raised in the motion, response, and any subsequent replies.").

In their motion, appellees argued, "For several reasons, the Note, as modified by the Modification, does not qualify as a negotiable instrument within the meaning of the Texas Uniform Commercial Code." Among the reasons appellees provided was the fact the Note made multiple references to other documents, including the Loan Agreement. As discussed above, the Modification referred to the Note and carried forward any provisions of the Note not inconsistent with provisions in the Modification.

In granting the motion for partial summary judgment, the trial court organized its reasons differently from appellees and added to the reasons they presented[14]

---

**13.** The Bank's endorsement to Guniganti and appellees on the Note refers to "the Note, Deed of Trust as modified," thus indicating it was necessary to examine the Modification to

determine one's rights with respect to payment.

**14.** The trial court analyzed the Note and the Modification separately and then analyzed the

Nevertheless, the court also concluded that, "for the reasons stated in the Motion for Partial Summary Judgment," the Note, the Modification, and Note as amended did not constitute a negotiable instrument. Accordingly, the trial court explicitly granted partial summary judgment on grounds raised in the motion.

As discussed above, we have found one of the grounds in appellees' motion meritorious. We therefore overrule Guniganti's second issue. *See Martin v. Sw. Elec. Power Co.*, 860 S.W.2d 197, 199 (Tex.App.-Texarkana 1993, writ denied) (holding judgment must be affirmed if there is any legal ground presented to trial court on which it can be upheld, even if court's reason was erroneous), *cited with approval in Wimmer v. State*, No. 03–03–00135–CV, 2004 WL 210629 at *2 (Tex.App.-Austin Feb. 5, 2004, pet. denied) (mem. op.).

### III. Propriety of Declaratory Judgment

▮ In issue three, Guniganti argues the trial court improperly granted declaratory judgment. In the judgment, the trial court decreed that limitations barred enforcement of both the Note as modified and the Deed of Trust.

The purpose of the Uniform Declaratory Judgments Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." Tex. Civ. Prac. & Rem.Code § 37.002(b). The act further provides in relevant part:

> A person interested under a deed ..., written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a ... contract ... may have determined any question of construction. or validity arising under the instrument ... [or] contract ... and obtain a declaration of rights, status, or other legal relations thereunder.

Tex. Civ. Prac. & Rem.Code § 37.004(a).

▮ In suits for declaratory relief, a trial court has limited discretion to refuse a declaratory judgment, and may do so only when judgment would not remove the uncertainty giving rise to the proceedings. *SpawGlass Constr. Corp. v. City of Houston*, 974 S.W.2d 876, 878 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). A declaratory judgment is appropriate when a real controversy exists between the parties and a court may determine the entire controversy by judicial declaration. *Id.* at 879. To constitute a justiciable controversy, the controversy must be real and substantial and involve a genuine conflict of tangible interests and not merely be a theoretical dispute. *Id.*

▮ The Declaratory Judgments Act is not available to settle disputes already pending before a court. *Riddick v. Quail Harbor Condo. Ass'n*, 7 S.W.3d 663, 672 (Tex.App.-Houston [14th Dist.] 1999, no pet.). A defensive declaratory judgment, however, may present issues beyond those the plaintiff has raised. *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex.1990). When a declaratory judgment counterclaim has greater ramifications than the original suit—such as settling future disputes—a court may allow the counterclaim. *See Winslow v. Acker*, 781 S.W.2d 322, 328 (Tex.App.-San Antonio

---

Note as amended by the Modification. In reasoning that the Note as amended by the Modification was not a negotiable instrument because it was not a single signed writing, the court observed, "The UCC contemplates that each negotiable instrument be '*a* signed writing.'" Quoting Tex. Bus. & Com.Code § 3.104 cmt. 1 (emphasis supplied by trial court). This argument was not in appellees' motion.

1989, writ denied), *cited with approval in Millard,* 800 S.W.2d at 841–42. A counterclaim has greater ramifications than the original suit if it seeks affirmative relief. *HECI Exploration Co. v. Clajon Gas Co.,* 843 S.W.2d 622, 638–39 (Tex.App.-Austin 1992, writ denied). A counterclaim states a claim for affirmative relief if it alleges that the defendant has a cause of action independent of the plaintiff's claim, on which the defendant could recover benefits, compensation, or relief, even if the plaintiff were to abandon or fail to establish his cause of action. *See Millard,* 800 S.W.2d at 841.

In his brief-in-chief, Guniganti argues declaratory judgment was improper because the issue appellees raised was already before the court by virtue of appellees' affirmative defense of limitations. Appellees respond that their request for declaratory judgment was appropriate because (1) their interests under their personal guarantees went beyond the claims Guniganti asserted against the partnership and (2) they were seeking a declaration of an ongoing and continuous relationship. In reply, Guniganti relies on his initial argument and also argues that (1) no controversy existed regarding the deed of trust because he had abandoned his claim of foreclosure under the deed of trust and (2) appellees were not entitled to an award of attorneys' fees on a declaratory judgment to remove a cloud on title. On this record, we cannot conclude the trial court abused its discretion in rendering a declaratory judgment and awarding appellees their attorneys' fees.

The trial court's declaration regarding enforcement of the Note as modified was arguably redundant with its previous ruling on the motion for partial summary judgment, based on appellees' affirmative defense of limitations to enforcement of the Note. The court's declaration regarding enforcement of the Deed of Trust, however, arguably went beyond its ruling on enforcement of the Note.

Although Guniganti argues there was no justiciable controversy regarding the Deed of Trust because he had abandoned his claim for foreclosure, he also argues appellees' affirmative defense of limitations to enforcement of the Deed of Trust was pending before the court and declaratory judgment was improper for that reason. Guniganti cannot have it both ways. By the time the court ruled on appellees' request for declaratory judgment, the court had ordered Guniganti's foreclosure claim abandoned, and thus, appellees' affirmative defense to that claim was necessarily no longer before the court.

■ Finally, Guniganti argues an award of attorneys' fees is not permissible in a suit to remove a cloud on title. Guniganti relies on *Southwest Guaranty Trust Co. v. Hardy Road 13.4 Joint Venture,* 981 S.W.2d 951 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). *Southwest Guaranty* involved a party seeking a declaration that a lien on its property was invalid and that the lien be released of record. *See id.* at 957. As part of its judgment, the trial court declared title quieted. *See id.* The trial court also denied attorneys' fees. *See id.* at 956. The appellate court held "that the trial judge did not abuse his discretion [in disallowing attorneys' fees] because he could have determined, as we have, that the suit for declaratory judgment was no more than a suit to quiet title, on which no attorney's fees may be awarded." *Id.* at 957.

In *Max Duncan Family Investments, Ltd. v. NTFN, Inc.,* the Dallas Court of Appeals rejected an appellant's reliance on *Southwest Guaranty* under circumstances similar to those in the present case. 267 S.W.3d 447, 453–54 (Tex.App.-Dallas 2008,

pet. denied).[15] In *Max Duncan*, the appellees had sought a declaration that a note and lien were void as arising from an interested director transaction. *Id.* at 449–50. The trial court agreed, granted summary judgment in favor of appellees, and awarded appellees attorney's fees. *Id.* at 450. After observing appellant's reliance on *Southwest Guaranty* was "misplaced," the appellate court opined:

> Here, [appellees] NTFN and Morningside brought a declaratory judgment action to invalidate the Note and the lien securing the Note. The Uniform Declaratory Judgment Act ("UDJA") permits a party to bring a declaratory judgment action to invalidate a real estate note, as well as any lien securing the note. *See* TEX. CIV. PRAC. & REM CODE ANN. § 37.004(a) (Vernon 2002). The UDJA also provides that in any proceeding under the act a court may award costs and reasonable attorney's fees as are equitable and just. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 2002). The trial court's decision concerning the grant or denial of attorney's fees in a declaratory judgment action will not be reversed on appeal absent a clear showing of an abuse of discretion. *Knighton v. Int'l Bus. Mach. Corp.*, 856 S.W.2d 206, 210 (Tex.App.-Houston [1st Dist.] 1993, writ denied). This action involves more than just title and possession of real property; the action concerns the validity of a real estate lien note. Therefore, the action may be brought under the UDJA and costs and attorney's fees may be recovered. *See Shankles v. Shankles*, 195 S.W.3d 884, 885–86 (Tex.App.-Dallas 2006, no pet.). Under the circumstances of this case, we cannot conclude the trial court abused its discretion in awarding Morningside and NTFN costs and attorney's fees.

*Id.* at 453–54.

Like the trial court in *Max Duncan* and unlike that in *Southwest Guaranty*, the trial court in the present case exercised its discretion to award attorneys' fees. Given the relationships among the parties,[16] the nature of the intervenors' affirmative claims, and the partnership's relative inactivity in the case, the trial court could have reasonably determined appellees' request for declaratory judgment was more than merely a ploy to recover attorneys' fees.

For the preceding reasons, we cannot conclude the trial court abused its discretion in rendering the declaratory judgment and awarding appellees their attorneys' fees. We therefore overrule Guniganti's third issue.

## CONCLUSION

Having overruled Guniganti's three issues, we affirm the judgment.

---

**15.** In *Mortgage Electronic Registration Systems, Inc. v. Groves*, we observed that courts have used the term "suit to quiet title" to refer to the following two types of legal disputes: those regarding title to and possession of real property (trespass to try title suits) and those regarding "the validity of other 'clouds' on an undisputed owner's title to real property." No. 14–10–00090–CV, 2011 WL 1364070, at *3 (Tex.App.-Houston [14th Dist.] April 12, 2011, no pet. h.) (mem. op.). We classified both *Max Duncan* and *Southwest* *Guaranty* as the second type of dispute. *Id.* We held Grove's claim was not in the nature of a trespass to try title action, but did not decide whether that classification rendered the declaratory judgment inappropriate. *Id.* at *4.

**16.** The record contains an abatement order indicating at least some of the parties were involved in other litigation against each other.