**Affirmed and Memorandum Opinion filed June 6, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00766-CV

---

### ALLEN PARKER COMPANY, Appellant,

### V.

### TRUSTMARK NATIONAL BANK, Appellee.

---

**On Appeal from the 268th District Court
Fort Bend County
Trial Court Cause No. 06-DCV-151975**

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from the trial court's order striking the petition in intervention filed by Allen Parker Company (APC) and granting Trustmark National Bank's motion to withdraw funds from the registry of the court. APC asserts that (a) the trial court abused its discretion in striking its petition in intervention, (b) the default judgment against APC's predecessor in interest does not deprive it of a justiciable interest in the funds on deposit in the registry of the

court, (c) APC's failure to record the assignment of the judgment lien at issue does not affect its priority over Trustmark's later-recorded judgment lien, and (d) the trial court abused its discretion by granting Trustmark's motion to withdraw funds from the registry of the court. We affirm.

## I

In September 2006, the plaintiffs, who are not parties to this appeal, filed a petition for partition and forced sale of three tracts of real property located in Fort Bend County.[1] The plaintiffs moved for partial summary judgment in May 2007, seeking the partition by forced sale and the appointment of a receiver. The trial court granted the partial summary judgment on June 8, 2007,[2] finding that the property could not be partitioned in kind, ordering it partitioned by forced sale, and appointing a receiver to handle the sale of the properties. It further found the following liens against the interest of defendant Virgil V. Mott, Sr. (the Mott Sr. property interest):

> A. J. Kelly Joy appears of record to be the owner and holder of a judgment lien in the amount of $282,085.00, plus costs and interest, filed on March 26, 2003, against Virgil V. Mott, Sr., recorded under Clerk's File No. 2003038685 of the Official Records of Fort Bend County, Texas.

---

[1] Some of the background facts of this case are set out in our prior opinion involving these same parties. *See Allen Parker Co. v. Trustmark Nat'l Bank*, No. 14-11-00027-CV, 2012 WL 8017011, at *1 (Tex. App.—Houston [14th Dist.] Feb. 16, 2012, no pet.) (mem. op.) (reversing and remanding to the trial court without reaching the merits because no motion to strike the intervention had been filed). We have expanded upon these facts as necessary to dispose of this appeal.

[2] Our record contains a copy of a Texas Rule of Civil Procedure 306a(3) notification dated June 12, 2007, from the Fort Bend County District Clerk, addressed to "Richard L. Fuqua, Fuqua & Keim, LLP, 2777 Allen Parkway Suite 480, Houston, TX 77019," stating that this partial summary judgment was signed. Lead counsel on APC's petition in intervention is reflected as "Richard L. Fuqua" with the same address as that contained on the Rule 306a(3) notification.

B. Wachovia Bank, N.A., successor by merger to SouthTrust Bank, appears of record to be the owner and holder of a judgment lien against Virgil V. Mott, Sr.[,] filed on April 8, 2003, in the amount of $748,632.00, plus costs and interest, recorded under Clerk's File No. 2003045498 of the Official Records of Fort Bend County, Texas.

C. Prosperity Bank, successor by merger to Southern National Bank, N.A., appears of record to be the owner and holder of a Deed of Trust dated April 28, 2003, in the amount of $100,000.00, pertaining to the tract located at 3945 South Main, Stafford, Texas, and a judgment lien against Virgil V. Mott, Sr., dated October 2, 2003, in the amount of $792,000.00 as to all three tracts, recorded under Clerk's File No. 2003139189 of the Official Records of Fort Bend County, Texas.

D. Texas State Bank, successor by merger to Community Bank & Trust, S.S.B., appears of record to be the owner and holder of a judgment lien against Virgil V. Mott, Sr., dated January 6, 2004, in the amount of $153,000.00 plus costs and interest, recorded under Clerk's File No. 2004016888 of the Official Records of Fort Bend County, Texas.

E. Wells Fargo Bank, N.A. appears of record to be the owner and holder of a judgment lien against Virgil V. Mott, Sr., dated April 19, 2005, in the amount of $249,000.00 plus costs and interest, recorded under Clerk's File No. 2005044354 of the Official Records of Fort Bend County, Texas.

F. Trustmark National Bank appears of record to be the owner and holder of a judgment lien against Virgil V. Mott, Sr., dated March 16, 2005, in the amount of $169,516.00, plus costs and interest, recorded under Clerk's File No. 2005056327 of the Official Records of Fort Bend County, Texas.

G. Acushnet Company appears of record to be the owner and holder of a judgment lien against Virgil V. Mott, Sr., dated December 5, 2006, in the amount of $8,489.16, plus interest and attorneys fees, recorded under Clerk's File No. 2006146416 of the Official Records of Fort Bend County, Texas.

H. An interest in the Acushnet Judgment is held by the law firm of Hull & Associates, P.C., 6200 Savoy, Suite 440 Houston, Texas 77036, recorded under Clerk's File No. 2006146416 of the Official Records of Fort Bend County, Texas.

I.  Peter E. Pratt, Jr. is the Receiver for the Estate of Virgil V. Mott, Sr., as established by the Court Ordered Receivership in Cause No. 802,995-401 styled Acushnet Company vs. SHGC, Ltd d/b/a Sugar Hill Golf Course, Sheva Capital Corporation, Virgil V. Mott, Sr., and Martha M. Mott a/k/a Martha F. McVay, in the County Civil Court at Law Number Three (3), Harris County, Texas, recorded under Clerk's File No. 2006152367 of the Official Records of Fort Bend County, Texas.

On June 20, 2007, the plaintiffs moved for default judgment against the non-answering parties, including defendants Virgil V. Mott, Sr., and the following purported lien holders:  J. Kelly Joy, Wachovia Bank, N.A., Texas State Bank, and Wells Fargo Bank, N.A.  The plaintiffs also sought to sever the default judgment against the non-answering parties.  The trial court signed a final judgment and order granting severance as to these non-answering parties on July 2, 2007, which was docketed under cause number 06-CV-151975.  The remainder of the case continued, docketed under cause number 06-DCV-151975.[3]

After the sale of these properties, the court-appointed receiver deposited a total of $639,262.09 into the registry of the court.  The last portion of the proceeds from the sale of the properties was deposited on January 19, 2010.  The court-appointed receiver completed his duties and was discharged after his fees had been paid from the funds on deposit in the court's registry on January 29, 2010.  The parties who owned unencumbered interests withdrew their funds from the court's registry on December 18, 2009, and March 17, 2010, leaving $170,070.74 in the court's registry to satisfy the judgment liens against the Mott Sr. property interest.

---

[3] Several of the parties continued to use docket number 06-CV-151975 on their filings after the severance, but the documents filed subsequent to the severance order contain notations from the Fort Bend County District Clerk's Office indicating they were filed in cause number 06-DCV-151975.  APC's petition in intervention was styled and filed under docket number 06-DCV-151975.

On December 14, 2010, Trustmark moved to withdraw the remaining funds from the court registry to satisfy in part its judgment lien, plus interests and costs, of $208,894.16 as of that date. In this motion, Trustmark asserted that it had the highest priority among all parties found by the court to have record liens against the Mott Sr. property interest appearing among the Official Records of Fort Bend County.[4] Trustmark acknowledged that J. Kelly Joy had assigned his judgment lien to APC on February 13, 2006.[5] But Trustmark asserted that APC's lien interest, if any, does not appear among the official records of Fort Bend County, that APC, as the assignee of J. Kelly Joy, would be bound by the "take nothing" judgment entered against Joy, and that Trustmark's judgment lien, dated May 16, 2005, pre-dates the assignment of Joy's judgment lien to APC.

This motion was scheduled for hearing at 9:00 a.m. on December 17, 2010. At 8:25 a.m. that day, APC filed a petition in intervention, objections to Trustmark's motion, and its own motion to withdraw the remaining funds. APC attached a copy of an "Assignment of Judgment and Judgment Lien" to its petition, executed by Joy on February 13, 2006, assigning Joy's March 12, 2003, judgment lien to APC. The assignment referred to an abstract of judgment, which was attached to and incorporated in the assignment. This abstract of judgment

---

[4] Trustmark attached an affidavit from the president of Prosperity Bank in which he stated that Prosperity Bank's predecessor-in-interest, Southern National Bank, settled its dispute and released all claims against Virgil Mott, Sr., including Prosperity Bank's judgment lien.

[5] APC attached to its motion a copy of a mutual release and settlement agreement executed on February 13, 2006, by Virgil Mott, Sr., individually and as president of APC, Richard L. Fuqua, as partner of Fuqua & Keim, L.L.P., and J. Kelly Joy. In this agreement, Joy agreed to "execute an assignment of [the March 6, 2003 unexecuted judgment obtained against Mott, Sr. and APC under Cause No. 02-CV-127467 in the 400th District Court of Fort Bend County] . . . effective immediately after . . . Joy dismiss[ed] with prejudice [cause no. 2004-47307, *Wachovia Bank, N.A. and J. Kelly Joy v. Virgil V. Mott, Jr., Mott Petroleum Corp., and Fuqua & Keim, L.L.P.*, filed in the 125th District Court of Harris County on August 27, 2004]."

5

essentially matches the description of the Joy judgment lien referred to above in the trial court's partial summary judgment.

Counsel for APC appeared at the hearing on Trustmark's motion.[6] At this hearing, Trustmark asserted that it was the priority lien holder of record entitled to the remaining funds on deposit in the registry of the court. Trustmark acknowledged that it received, via email, a copy of the petition in intervention from APC, in which APC claimed to be an assignee of the judgment lien of J. Kelly Joy, a party against whom a default judgment had been taken.

APC claimed that on December 14, it received a copy of Trustmark's motion to withdraw funds from the registry of the court. APC requested that, as the assignee of the first priority lien holder, it be permitted to withdraw the remaining funds held in the registry of the court. It asserted it was never served notice or citation and was never brought into this matter "as being a record owner of this judgment lien that was assigned back in February of 2006." The court asked APC how people could know about its assignment if it had not been recorded. The court further queried APC regarding why it had not joined the lawsuit earlier:

> If you're going to rely upon a judgment lien that's referred in the judgment records of this county -- this suit's been on file in this county for a long time -- why didn't you join this lawsuit earlier? If you're stepping in the shoes of [Joy], why didn't Mr. [Joy] come in this lawsuit at that proper time? He was served properly.
>
> . . .
>
> It sounds to me like you've got a complaint against [Joy], not against entry [sic] into this lawsuit.

APC responded that Joy assigned and transferred all interest that he had in the judgment lien to APC prior to this suit being filed. Trustmark asserted that APC's

---

[6] Rather than Richard L. Fuqua, the lead counsel who had signed the petition in intervention, co-counsel Michael L. Fuqua appeared on behalf of APC for this hearing.

6

counsel had known about these proceedings since 2007 because one of the parties had filed a petition for declaratory judgment against him in this case. Trustmark stated that counsel for APC had responded to discovery requests from the receiver for the estate of Virgil Mott, Sr., in this matter in August of 2007.[7]

In response, APC reiterated that it had not been involved in the earlier proceedings. The trial court stated that APC had no "workable" interest in this lawsuit because it should have intervened prior to the entry of the final default judgment against its predecessor-in-interest, J. Kelly Joy. The trial court granted Trustmark's motion to withdraw funds from the registry and found that APC was "not in this lawsuit." The trial court signed an order that day approving Trustmark's motion to withdraw funds from the registry of the court.

APC appealed the trial court's order disbursing the final funds from the registry of the court on January 5, 2011.[8] In our prior opinion, we concluded that the trial court abused its discretion in striking APC's petition in intervention because no final judgment had been entered at the time it filed the petition and no motion to strike had been filed. *See Allen Parker Co. v. Trustmark Nat'l Bank*, No.

---

[7] See note 8, *infra*.

[8] On January 19, 2011, Trustmark filed an original answer to APC's petition in intervention and response to APC's motion to withdraw funds from the registry of the court. Attached to its answer, it included a copy of "Third-Party Defendant, Richard L. Fuqua, Trustee's Responses to the Request for Disclosure Pursuant to Rule 194 of Third-Party Plaintiff, the Receivership Estate of Virgil V. Mott, Sr." (Request for Disclosure), dated August 9, 2007 and signed by Richard L. Fuqua. The Request for Disclosure was styled in the same fashion as the underlying case.

In the response to the request, Fuqua repeatedly referenced "the assignment of the judgment at issue to APC," although he identified another individual as counsel for APC in a different lawsuit. He identified himself as a "person[] having knowledge of relevant facts" and included the following "brief statement of [his] connection with the case": "Defendant in this lawsuit and was involved in the global settlement of the Harris County Lawsuit and the Fort Bend County Lawsuit resulting in the assignment of the judgment at issue to APC." He also stated that, to the best of his knowledge, "all parties have been correctly named" in the suit.

7

14-11-00027-CV, 2012 WL 8017011, at *3 (Tex. App.—Houston [14th Dist.] Feb. 16, 2012, no pet.) (mem. op.). We took no position on APC's substantive issues regarding its petition in intervention and motion to withdraw funds from the court's registry. *Id.*

Back before the trial court, Trustmark filed a motion to strike APC's petition in intervention on June 18, 2012. In this motion, Trustmark asserted that APC lacked a justiciable interest in the funds on deposit in the registry of the court because of its status as a "privy and assignee" of J. Kelly Joy, a party already adjudicated to take nothing in this matter. Trustmark argued that the doctrine of res judicata prevented APC from intervening in this case. Trustmark further claimed that APC's failure to record the assignment of the judgment lien was fatal to its assertion of a superior right to Trustmark's recorded judgment lien.

APC responded to Trustmark's motion to strike on June 22, 2012. In its response, APC contended that, as a lawful owner of a properly recorded and first-in-time abstract of judgment lien against the real property at issue in this case, it timely intervened in this proceeding prior to the entry of a final judgment. APC asserted that its judgment lien was superior as a matter of law to that of Trustmark's. Finally, APC argued that the fact that the assignment of the judgment lien from J. Kelly Joy to it was unrecorded did not affect its superior rights under the judgment lien, in part because Trustmark had actual notice of the assignment as demonstrated by its inclusion of the executed release and settlement agreement by which Joy assigned his judgment lien to APC in its motion to withdraw funds.

The trial court heard Trustmark's motion to strike and motion to withdraw funds from the registry of the court on August 17, 2012. APC again asserted its right to the funds in the registry of the court as the assignee of the priority lien holder, J. Kelly Joy. It further argued that Trustmark had actual notice of the

assignment as shown by the settlement agreement it attached to its motion to withdraw funds, described above. Trustmark responded by asserting that APC was barred from intervening because Joy was the only record owner of the judgment lien at the time of the filing of this suit and APC failed to record its assignment. APC acknowledged that it had not recorded the assignment of the judgment lien.

Both Trustmark and APC re-urged their competing motions to withdraw funds from the registry of the court. After hearing the parties' arguments, the trial court took the matter under advisement. Later that day, the trial court signed an order striking APC's petition in intervention and dismissing it with prejudice as a party to the proceedings. In this order, the court also granted Trustmark's motion to withdraw funds from the registry of the court. From this order, APC timely appealed.

## II

In its first issue, APC asserts that the trial court abused its discretion in striking its petition in intervention. "Any party may intervene by filing a pleading subject to being stricken out by the court for sufficient cause on the motion of any party." Tex. R. Civ. P. 60. The trial court has broad discretion in determining whether to strike an intervention. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990) (op. on reh'g). If a party to the pending suit moves to strike the intervention, the burden shifts to the intervenor to demonstrate a justiciable interest in the pending suit. *Guniganti v. Kalvakuntla*, 346 S.W.3d 242, 247 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

A party has a justiciable interest in a lawsuit when its interest will be affected by the litigation. *Id.* In other words, an intervenor must establish a present legal or equitable interest in the subject matter that makes it proper for it to participate in the proceeding. *Jabri v. Alsayyed*, 145 S.W.3d 660, 672 (Tex.

9

App.—Houston [14th Dist.] 2004, no pet.). A trial court abuses its discretion by striking a plea in intervention if: (1) the intervenor establishes it has a justiciable interest; (2) the intervention will not complicate the case by excessively multiplying the issues; and (3) the intervention is practically essential to effectively protect the intervenor's interest. *Guar. Fed. Sav. Bank*, 793 S.W.2d at 657.

When properly recorded and indexed, an abstract of judgment creates a judgment lien superior to the rights of subsequent purchasers and lien holders. *Wilson v. Dvorak*, 228 S.W.3d 228, 233 (Tex. App.—San Antonio 2007, pet. denied). One of the primary purposes of the statutory scheme providing for the creation and recording of judgment liens is to provide notice to subsequent purchasers and creditors of the existence of the judgment and lien. *See id.* at 234.

APC claims a justiciable interest as the assignee of the J. Kelly Joy judgment lien. But it is undisputed that APC never recorded the assignment of this lien in the Fort Bend County real property records. Thus, the plaintiffs in the underlying case had no reason to notify APC of their petition for partition by forced sale of the property in which APC claims an interest.[9]

Additionally, APC's interest in the proceeds from the sale of the Mott Sr. property interest arose solely from its status as the successor-in-interest to Joy. As discussed above, the plaintiffs in the underlying suit obtained a default judgment against Joy on July 2, 2007, because he failed to answer.[10] This default judgment

---

[9] Trustmark, as a defendant and judgment creditor in the underlying case, had no duty to notify APC of the pending litigation.

[10] Because APC's claimed assignment occurred *before* the petition in the underlying suit was filed, APC is not bound by the default judgment obtained against Joy. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996) ("All persons are privy to a judgment whose succession to the rights of property therein adjudicated are derived through or under one of the parties to the action, and which accrued subsequent to the commencement of the action." (internal quotations omitted)).

was taken nearly a year and a half after APC obtained Joy's interest in the judgment lien by assignment on February 13, 2006. APC took no action after the assignment of the judgment lien to insure that its interest in this lien would be protected should any property held by the judgment debtor be sold in the county in which the lien was recorded.

The funds from the sales of the properties to which APC claims an interest through its assignment of the Joy judgment lien were deposited into the registry of the court on September 8, 2009, October 7, 2009, and January 19, 2010. Thus, the sales of these properties occurred prior to these dates. APC did nothing to protect its interest in the judgment lien prior to the sale of any of these properties, which occurred more than three years after it obtained its assignment of the judgment lien from Joy.

Indeed, APC took no action to protect its interest in the judgment lien that is the subject of this appeal until: (1) more than four years had passed since the underlying suit was filed; (2) over two and a half years had elapsed since the plaintiffs sought summary judgment seeking partition by forced sale and the appointment of a receiver to sell properties in the county in which this judgment lien was recorded; (3) two and a half years had gone by since the trial court had ordered the forced sale of these properties and appointed a receiver to sell the properties; (4) nearly two years had passed since J. Kelly Joy, the original judgment lien holder, had had a default judgment taken against him and had been severed from the case; and (5) almost an entire year had passed since the properties subject to the Joy judgment lien, from which APC claims its interest arose, had been sold. APC took no interest in this suit until the moment that another judgment creditor, nine months after the final disbursement of non-encumbered funds to the plaintiffs and almost a year after the receiver had been discharged,

11

moved to withdraw funds from the registry of the court based on what it reasonably believed to be its status as the highest priority judgment lien holder.[11]

In sum, APC failed to place any party on notice of the existence of its interest in the J. Kelly Joy judgment lien. *See Wilson*, 228 S.W.3d at 234; *cf. Intertex, Inc. v. Kneisley*, 837 S.W.2d 136, 138 (Tex. App.—Houston [14th Dist.] 1992, writ denied) ("A judgment creditor's lien will take precedence over a prior unrecorded deed holder so long as the lien holder attaches before gaining notice of the outstanding unrecorded deed."). Its intervention in the literal final hour of this case—after years had passed during which it took no action to protect its interest by either properly recording its assignment or timely intervening[12]—would necessarily complicate this case by excessively multiplying the issues. *See Guar. Fed. Sav. Bank*, 793 S.W.2d at 657.

Because a trial court has "broad" discretion in determining whether to strike an intervention, that discretion presumably includes consideration of *all* issues related to whether intervention was proper in the case under the circumstances, *i.e.*,

---

[11] As noted above, the lead attorney representing APC had notice of the underlying suit for partition and sale as early as August 2007, although he may not have been representing APC's interests at that time. Further, the lead attorney representing APC also was involved in reaching the settlement agreement that led to the assignment of Joy's judgment lien to APC. Virgil Mott, Sr., one of the original defendants and the judgment debtor in this case, also was involved in the settlement agreement that led to the assignment. In fact, as noted *supra*, Mott, Sr., was the president of APC and signed the settlement agreement on APC's behalf.

[12] *Cf. In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 722–23, 725–27 (Tex. 2006) (orig. proceeding) (discussing "intervention" on appeal and using Fifth Circuit's test applicable to Fed. R. Civ. P. 24(a)(2) governing motions to intervene in federal courts articulated in *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005), to examine the timeliness of appellate "interventions," the considerations of which are: (1) length of time during which intervenor should have known of its interest in case before attempting to intervene; (2) extent of prejudice existing parties may result as result of intervenor's failure to apply for intervention as soon as it knew or should have know of its interest in case; (3) extent of prejudice to intervenor if intervention is denied; and (4) existence of unusual circumstances militating for or against determination that intervention application is timely).

any sufficient cause.  *See* Tex. R. Civ. P. 60; *see also N.E. Neighbors Coal. v. Tex. Comm'n on Envtl. Quality*, No. 03-11-00277-CV, 2013 WL 1315078, at \*4 (Tex. App.—Austin March 28, 2013, no pet.) (mem. op.).  Under the unique circumstances of this case, including the strict statutory requirements governing abstracting and recording judgment liens and the last-minute nature of APC's attempted intervention, we cannot say that the trial court abused its discretion in striking APC's petition in intervention.  Accordingly, we overrule APC's first issue.  Our disposition of this issue renders APC's other issues moot, so we need not address them.[13]

\* \* \*

We have determined that the trial court did not abuse its discretion in striking APC's petition in intervention.  Accordingly, we affirm the trial court's order striking its intervention and granting Trustmark's motion to withdraw funds from the registry of the court.[14]

/s/     Jeffrey V. Brown
Justice

Panel consists of Justices Frost, Brown, and Donovan.

---

[13] An appealing party may not complain of errors that do not affect its rights.  *See Torrington v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000).

[14] We deny Trustmark's motion to dismiss this appeal.