**Affirmed in Part; Reversed and Remanded in Part and Memorandum Opinion filed June 6, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00827-CV

---

## TEXAS REIT, LLC; DALIO HOLDINGS I, LLC; AND DALIO HOLDINGS II, LLC, Appellants

## V.

## WCW HOUSTON PROPERTIES, LLC, Appellee

---

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2017-35320**

---

## MEMORANDUM OPINION

Appellants Texas REIT, LLC, Dalio Holdings I, LLC, and Dalio Holdings II, LLC appeal the trial court's final summary judgment in favor of appellee WCW Houston Properties, LLC. Concluding that genuine issues of material fact were raised with regard to WCW's contract damages and equitable subordination of Dalio I's lien, we affirm in part and reverse and remand in part.

BACKGROUND

In 2008, Texas REIT, LLC (TREIT), an entity formed for the purpose of buying and selling real estate, executed a promissory note in favor of International Bank of Commerce (IBC) in the amount of $8,640,000 (the IBC Note). *See Tex. REIT, LLC v. Mokaram-Latif W. Loop, Ltd.*, No. 14-22-00014-CV, 2022 WL 17421518, at *1 (Tex. App.—Houston [14th Dist.] Dec. 6, 2022, pet. denied) (mem. op.). The IBC Note was secured by a retail strip center and a contiguous Walgreen's on Westheimer Road in Houston (the Property) and a Deed of Trust executed by TREIT. *Id*. Appellee WCW Houston Properties, LLC (WCW) acquired a second lien on the Property (the WCW Note) and subsequently sought to foreclose.[1] *Id*. Appellants TREIT, Dalio Holdings I, LLC, (Dalio I) and Dalio Holdings II, LLC, (Dalio II)[2] are entities controlled by a non-party to this action, Ali Choudhri. *Id*.

The underlying litigation in this case began on May 25, 2017, when Architectural Services International (ASI) filed suit against TREIT alleging TREIT breached the note originally executed May 2, 2008—and later acquired by WCW. Earlier in February 2012, TREIT and ASI entered into a Modification Agreement in which TREIT agreed to pay ASI $1,350,000 together with interest on the unpaid principal balance until maturity. The Modification Agreement provided, among other things that, "An event of default under the IBC Loan shall constitute a default hereunder." Approximately one year after filing suit, ASI assigned its rights to WCW.

On May 25, 2018, Dalio I acquired the IBC Note and Deed of Trust for

---

[1] TREIT executed this note in favor of Architectural Services International Inc., not currently a party to this action, in the amount of $1,500,000.

[2] When referring to both Dalio I and Dalio II in this opinion, we refer to them as the Dalio Entities.

$6,334,189.88, the full amount due and owing under the IBC Note at the time. Thirty-nine days later, on July 3, 2018, Dalio I foreclosed on the Property. *See Tex. REIT*, 2022 WL 17421518 at *1. In related litigation, Ali Mokaram, who owned a 30% interest in TREIT, sued Choudhri, TREIT, and the Dalio Entities for, among other things, wrongful foreclosure. *Id*. at *2. Mokaram filed suit on behalf of TREIT. Pursuant to arbitration agreements in the relevant documents, that dispute was referred to arbitration. An arbitration panel determined, among other things, that the Dalio Entities conducted a wrongful foreclosure of the Property with the purpose and intent of depriving TREIT and WCW of the Property and any lien on the Property. *Id.* According to the arbitrators, at the time of the foreclosure, the true balance due and owing on the IBC Note was $5,727,474.22, and the Property was worth $14 million. *Id.* The arbitrators issued a final arbitration award on July 27, 2021.

In the meantime, on November 20, 2019, WCW filed a motion for partial summary judgment on its breach-of-note claim. WCW alleged there was no dispute of material fact that WCW held the note, the note was past due, and the amount owed under the note was $4,445,659.20. TREIT responded, alleging a four-year statute of limitations applied to WCW's suit and although suit was filed within four years of the accrual of WCW's claim, a fact issue existed on whether diligence was demonstrated in obtaining service, which occurred approximately one month later. WCW replied, claiming a six-year statute of limitations applied because, under Business and Commerce Code section 3.118, the WCW Note was a negotiable instrument. TREIT further asserted that fact issues existed with regard to WCW's balance calculations on the note. On March 19, 2020, the trial court granted partial summary judgment on WCW's breach-of-note claim with damages to be determined at trial.

On October 11, 2021, after the arbitrators issued the final award in the related litigation, WCW amended its petition asserting claims for: (1) breach of contract; (2) order of foreclosure; (3) wrongful foreclosure against Dalio I; (4) declaratory judgment that Dalio I's foreclosure is void; (5) declaratory judgment against Dalio II that foreclosure is void; (6) quiet title; (7) conversion; (8) conspiracy; (9) declaratory judgment that WCW had a valid right to foreclosure; and (10) fraudulent transfer under the Uniform Fraudulent Transfer Act (TUFTA). On February 19, 2022, WCW filed a second motion for partial summary judgment based on collateral estoppel, citing the preclusive effect of the arbitration award in the companion litigation. WCW asserted that TREIT and the Dalio Entities were estopped from challenging the facts established by the award. WCW alleged its damages for breach of note were conclusively established by the arbitration award. WCW also sought an order to foreclose on the Property alleging that TREIT defaulted on its debt. Finally, WCW sought equitable subordination of Dalio I's lien to WCW's lien arguing that the arbitration award conclusively established the Dalio Entities' fraudulent conduct.

On April 18, 2022, the trial court granted an interlocutory summary judgment on WCW's breach-of-note claim awarding damages of $6,967,483. The court also granted interlocutory summary judgment on the wrongful foreclosure claim, awarding equitable subordination of the Dalio lien to the WCW lien, and granting WCW the right to proceed with foreclosure.

WCW subsequently filed a nonsuit of its remaining claims not resolved by summary judgment, which was granted. WCW further obtained summary judgment disposing of TREIT's counterclaims. Having disposed of all remaining claims, the trial court rendered final summary judgment in favor of WCW and denied appellants' motion for new trial.

TREIT and the Dalio Entities timely appealed the trial court's final summary judgment alleging the trial court erred in (1) granting summary judgment on WCW's breach-of-note claim because there are genuine issues of material fact as to whether suit was filed within the applicable statute of limitations; (2) applying offensive collateral estoppel without making the appropriate findings, and relying on the arbitration award, which was not properly authenticated; (3) granting summary judgment because WCW did not conclusively establish its entitlement to summary judgment; and (4) calculating damages based on compound, rather than simple, interest.

## ANALYSIS

### I. Standard of review and applicable law

We review a trial court's order granting a traditional summary judgment de novo. *Mid–Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). In reviewing a grant of summary judgment, we consider all of the evidence in the light most favorable to the nonmovant. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007). To prevail on a traditional motion for summary judgment, a movant must prove entitlement to judgment as a matter of law on the issues pleaded and set out in the motion for summary judgment. Tex. R. Civ. P. 166a(c); *Masterson v. Diocese of Nw. Texas*, 422 S.W.3d 594, 607 (Tex. 2013).

### II. The trial court did not err in applying a six-year statute of limitations.

In appellants' first issue they assert the trial court erred in granting summary judgment on WCW's breach-of-note claim because the statute of limitations expired before service was made on TREIT. The parties do not dispute that WCW's breach-of-note claim accrued May 28, 2013, and ASI filed suit on May 25, 2017, within four years of accrual of the claim. The parties also do not dispute that TREIT was not served until July 3, 2018. On appeal, appellants challenge to the trial court's

summary judgment on WCW's breach-of-note action is limited to the applicable statute of limitations.

If WCW's breach-of-note claim is one on a contractual debt and governed by the four-year statute of limitations, it may be barred because service was not made within the applicable limitations period. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(3) (suit on a debt is subject to four-year limitations period); *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011) (plaintiff who files a petition within the limitations period but does not complete service until after the statutory period has expired, is entitled to have the date of service relate back to the date of filing if the plaintiff has exercised diligence in effecting service). Generally, the question of the plaintiff's diligence in effecting service is one of fact, and is determined by examining the time it took to secure citation, service, or both, and the type of effort or lack of effort the plaintiff expended in procuring service. *Proulx v. Wells*, 235 S.W.3d 213, 216 (Tex. 2007).

WCW asserts, however, its note is a negotiable instrument under the Uniform Commercial Code and a six-year statute of limitations applies. *See* Tex. Bus. & Com. Code § 3.118(a) ("[A]n action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."). If the note was a negotiable instrument, the six-year statute of limitations applies. Tex. Bus. & Com. Code § 3.118(a). The negotiability of an instrument is a question of law. *Guniganti v. Kalvakuntla*, 346 S.W.3d 242, 248 (Tex. App.—Houston [14th Dist.] 2011, no pet.). We therefore address the question of whether WCW conclusively established its note was a negotiable instrument.

"Negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the

promise or order, so long as the promise or order does not state any other undertaking or instruction by the person promising or ordering payment to do any action in addition to the payment of money. Tex. Bus. & Com. Code § 3.104(a). A promise or order is unconditional unless it states an express condition to payment, that the promise or order is subject to or governed by another record, or that rights or obligations with respect to the promise or order are stated in another record. Tex. Bus. & Com. Code § 3.106(a).

TREIT asserts that the WCW Note is not negotiable because the rights or obligations with respect to the promise to pay are stated in another record. Specifically, TREIT points to the sentence in the Modification Agreement, which states, "An event of default under the IBC Note shall constitute a default hereunder." TREIT argues the language in the Modification Agreement plainly incorporates provisions from the IBC Note into the Modification Agreement. In other words, TREIT asserts the Modification Agreement's incorporation of the IBC Note's default provisions renders it non-negotiable.

A mere reference to another record does not of itself make the promise or order conditional. *Santos v. Yellowfin Loan Servicing Corp.*, No. 14-21-00151-CV, 2022 WL 2678846, at *3 (Tex. App.—Houston [14th Dist.] July 12, 2022, pet. denied) (citing section 3.106 of the Business and Commerce Code). But when a note specifically incorporates by reference the terms of other documents, the promise is no longer unconditional because one must examine those other documents to determine if they place conditions on payment.

For instance, in *Guniganti*, 346 S.W.3d at 249, this court held that language in a note stating that "[a]dditional advances will be made in accordance with the terms and conditions of the Loan Agreement, reference to same being here made for all purposes" burdened the note with the conditions of the other document and

7

rendered the note non-negotiable. We have also held that language in a note that it "is subject to and governed by said contract, which is hereby expressly referred to, incorporated herein and made a part hereof" destroyed the negotiability of the instrument and rendered the instrument burdened by the terms within the extrinsic contract. *Mitchell v. Riverside Nat'l Bank*, 613 S.W.2d 802, 803 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

In *Santos*, we reviewed two clauses in a note to determine whether the note was negotiable. 2022 WL 2678846 at *3. The debtor asserted in *Santos* that a note was non-negotiable because it provided the debtor would be in default if she failed to keep any of her agreements "under this Note *or under any other agreement with [the lender]*." *Id*. at *3 (emphasis in original). The debtor further asserted the note was non-negotiable because it contained the phrase, "You have read and agree to all provisions of this Note including those on pages 1 through 3 *and in the Disclosure Statement which are incorporated herein by reference* . . . See pages 1, 2 and 3 and the Disclosure Statement for additional important terms and conditions." *Id.* (emphasis in original). We held that the note was rendered non-negotiable by its incorporation of the terms of the Disclosure Statement—the second clause considered. *Id.* We did not hold the note to be non-negotiable due to the first term addressing the debtor's default, which is similar to the term TREIT relies on here. *See id.* at *3. We quoted the commentary to section 3.106, which explains, "It is not relevant whether any condition to payment is or is not stated in the writing to which reference is made. The rationale is that the holder of a negotiable instrument should not be required to examine another document to determine rights with respect to payment." Tex. Bus. & Com. Code § 3.106 cmt. 1; *Santos*, 2022 WL 2678846 at *3.

In this case, the WCW Note and the Modification Agreement do not incorporate the IBC Note by reference. The WCW Note does not contain language

comparable to that of the note in *Santos*. The quoted language does not burden the WCW Note with the conditions of the IBC Note. We conclude the WCW Note and the Modification Agreement together constitute a negotiable instrument. *See* Tex. Bus. & Com. Code §§ 3.104(a), 3.106(a); *cf. Santos*, 2022 WL 278846, at *3; *see also Smith v. Yellowfin Loan Servicing Corp.*, No. 05-21-00306-CV, 2023 WL 2596070, at *4 (Tex. App.—Dallas Mar. 22, 2023, no pet.) (mem. op.) (holding clause that referenced default if a promise was broken in the Loan Agreement did not render note non-negotiable).

Therefore, because the WCW Note is negotiable, the six-year statute of limitations applies, and the trial court did not err in granting summary judgment because the limitations period had not expired. We overrule appellants' first issue.

## III. The trial court did not err in permitting offensive use of collateral estoppel.

In appellants' second issue they challenge the summary judgment on collateral estoppel grounds because WCW failed to (1) conclusively establish that collateral estoppel could be used offensively; and (2) authenticate the arbitration award.

### A. Background facts

As stated above, in related litigation, a panel of arbitrators determined that the Dalio Entities conducted a wrongful foreclosure of the Property with the purpose and intent of depriving TREIT and WCW of the Property and any lien on the Property. *See Texas REIT*, 2022 WL 17421518 at *2. The dispute arose when a minority owner of TREIT sued the majority owner and the Dalio Entities for, among other things, wrongful foreclosure of the IBC Note. *Id*. Because the IBC Note and Deed of Trust contained binding arbitration agreements, the trial court in that case ordered the dispute to arbitration. *Id.* at *6. WCW was not a party to that litigation,

9

nor was it bound by the arbitration agreements. The trial court in the related litigation confirmed the arbitrators' award, and this court affirmed the trial court's judgment. *Id.* at *11.

As applicable to this case, the arbitrators found:

- Ali Choudhri, through the Dalio Entities, conducted a wrongful foreclosure of the Property with intent to deprive WCW of the Property and its lien on the Property.

- The panel was presented with evidence that the amount owed on the WCW Note was $3,650,990.05.

- Choudhri owed a fiduciary duty to TREIT to minimize its debts, which included taking steps to compromise and pay the WCW debt.

- Evidence showed WCW was willing to settle and compromise the WCW Note claim for $1.5 million.

- Choudhri "went to great lengths" to prevent WCW and IBC from foreclosing and taking significant equity in the Property.

- WCW asked to coordinate timing and logistics of the foreclosure, but Dalio I instructed its attorneys to withhold relevant information regarding the foreclosure process.

- The foreclosure was wrongful in that there were multiple defects before and during the process.

- Because Choudhri and the Dalio Entities "deliberately chilled" the bidding process for potential buyers there was no need to prove the defects caused a grossly inadequate selling price.

- In the alternative, the $10.1 million selling price was grossly inadequate in relation to the $14 million value of the Property.

- TREIT and its members were damaged by the wrongful foreclosure.

- Choudhri and the Dalio Entities were members of a combination, the object of which was to transfer the Property, which was owned by TREIT, to another entity under Choudhri's control and then conceal Choudhri's involvement in the transfers. Those objects constituted wrongful foreclosure, constructive fraud, and

breaches of Choudhri's fiduciary duties to TREIT.

- In assessing damages, the panel adopted the amount of $3,650,990.05 as "credit for the WCW lien."

In WCW's motion for summary judgment, it asserted that the arbitration award conclusively established (1) WCW's breach-of-note damages; (2) Dalio I's wrongful foreclosure; and (3) WCW's entitlement to equitable subordination of Dalio I's lien and foreclosure.

## B.    Offensive use of collateral estoppel

Appellants first assert that the trial court erred in granting WCW's motion for summary judgment based on collateral estoppel because the court did not adequately consider the factors required to apply collateral estoppel offensively.[3]

In seeking to invoke the doctrine of collateral estoppel, a party must establish three elements: (1) the facts sought to be litigated in the second action were fully and fairly litigated, (2) those facts were essential to the judgment in the prior action, and (3) the issue is identical to an issue in the prior action. *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001). When collateral estoppel is being used offensively, as here, the plaintiff uses the doctrine to estop a defendant from relitigating an issue that the defendant litigated and lost in prior litigation with another party. *Yarbrough's Dirt Pit, Inc. v. Turner*, 65 S.W.3d 210, 216 (Tex. App.—Beaumont 2001, no pet.).

A trial court has broad discretion in determining whether to allow a plaintiff

---

[3] WCW argues that appellants failed to preserve error on their collateral estoppel arguments by not raising these arguments in their response to the motion for summary judgment. We disagree. Appellants raised the issue in their motion for new trial. The trial court signed an order denying the motion for new trial stating that the trial court had considered the motion. *See Harvey v. Kindred Healthcare Operating, Inc.*, 525 S.W.3d 281, 285 n.11 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (holding that party does not waive argument when it was raised in a motion for new trial and the trial court denies the motion after having considered it).

11

to use collateral estoppel offensively. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979); *see also Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 7 (Tex.1986) (citing *Parklane Hosiery* with approval). A trial court abuses its discretion only when its action is arbitrary and unreasonable, without reference to guiding rules or principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

In determining whether to apply collateral estoppel offensively, the trial court must consider the *Parklane Hosiery* factors. *See Parklane Hosiery Co.*, 439 U.S. at 329–30, 99; *Scurlock Oil*, 724 S.W.2d at 7. The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where the application of offensive collateral estoppel would be unfair to a defendant, a trial court should not allow use of offensive collateral estoppel. *Fletcher v. Nat'l Bank of Commerce*, 825 S.W.2d 176, 179 (Tex. App.—Amarillo 1992, no writ). The first factor is whether application of the doctrine will tend to increase litigation by allowing a plaintiff to "wait and see" before filing suit instead of joining in the prior litigation. *See Parklane Hosiery*, 439 U.S. at 329–30. Second, the offensive use of collateral estoppel may be unfair under the circumstances of a particular case. Under this factor, we consider the defendants' incentive in the first action to vigorously defend the suit, the foreseeability of future suits, and the availability of procedural safeguards in the second suit that were not available in the first suit. *See Parklane Hosiery*, 439 U.S. at 330.

Applying the *Parklane Hosiery* factors to this case, we cannot conclude the trial court abused its discretion by giving collateral estoppel effect to findings in the arbitration award.[4] With respect to the first factor, WCW could not have participated

---

[4] While the trial court did not make specific findings on the *Parklane Hosiery* factors, appellants have not cited, nor has independent research revealed, authority supporting the necessity of explicit findings.

in the arbitration because it was not a signatory on the agreements, which contained mandatory arbitration clauses. Therefore, application of the doctrine did not tend to increase litigation. *See Parklane Hosiery*, 439 U.S. at 332 (holding plaintiff's probable inability to intervene in action brought by the Securities and Exchange Commission did not justify refusal to apply collateral estoppel offensively). With respect to the other fairness factors, the arbitrators repeatedly warned that Choudhri, through the Dalio Entities or any other entity he could create, "will likely continue his attempts to litigate . . . and to deprive TREIT of the Property again if given the opportunity." The panel noted that the evidence showed Choudhri, who owns the Dalio Entities, "will just seek to foreclose again on the Property, at an amount inflated by improper default interest created by Choudhri for his own self-interest."

The trial court in the instant action could clearly conclude that TREIT and the Dalio Entities were motivated to vigorously defend Mokaram's action in the arbitration proceeding. In anticipating future attempts at wrongful foreclosure and no end to litigation, the foreseeability of future suits was directly addressed by the arbitration panel. Finally, appellants have not directed us to any procedural safeguards they were deprived of in the arbitration that they would have been entitled to in the instant litigation. We conclude, considering all of the *Parklane Hosiery* factors, the trial court did not abuse its discretion in allowing WCW to use collateral estoppel offensively in this case. We overrule the first sub-part of appellants' second issue.

**IV.    The trial court did not err in admitting evidence of the arbitration award.**

In the second part of appellants' second issue, they assert the arbitration award was improper summary judgment evidence because it was not properly authenticated. In the trial court, appellants objected that the arbitration award was not admissible because it was a document from "an entirely separate arbitration

13

action, which [was] not part of any public record, and [had] not been properly verified for inclusion as summary-judgment proof in this case." The record contains no ruling on appellants' objection.

Summary-judgment evidence must be presented in a form that would be admissible at trial. *Hou–Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Defects in the form of authentication of attachments in support of a motion for summary judgment are waived without a proper objection in the trial court. *See Mansions in the Forest, L.P. v. Montgomery Cnty.*, 365 S.W.3d 314, 317 (Tex. 2012) (holding that an objection is required to preserve a complaint that a purported affidavit lacks a jurat or other indication that it was sworn to because it is an objection to form); *see also Leonard v. Knight*, 551 S.W.3d 905, 913 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Obtaining an express ruling on an objection to summary judgment evidence is necessary to preserve error for appellate review.").

Appellants assert they did not need to preserve error in the trial court because their objection was not to the form of authentication, but rather to a complete lack of authentication. *See In Estate of Guerrero*, 465 S.W.3d 693, 707 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (recognizing no objection is required to preserve error challenging unauthenticated or unsworn documents, or documents not supported by an affidavit).

Under Rule of Evidence 901, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a). In this case, WCW provided evidence sufficient to satisfy Rule 901 including affidavit testimony that Exhibit 4 is an original record or exact duplicate copy of records on file in Harris County, Texas maintained by the Harris County Clerk as

14

part of publicly accessible records. This is not a case in which authentication was completely lacking, but one in which appellants objected to the form of authentication. Because appellants failed to obtain a ruling on their objection, they failed to preserve error on the authentication of the arbitration award. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018) (to preserve error for formal defects, one must both object and obtain a ruling, or except to the trial court's failure to rule); *Mansions in the Forest, L.P.*, 365 S.W.3d at 317 (defects in the form of a document's authentication are formal defects). We overrule appellants' second issue.

## V. Summary judgment evidence does not support the trial court's determination of contract damages.

In appellants' third issue they contend WCW failed to conclusively establish its contract damages because it failed to show the damages were fully and fairly litigated in the arbitration proceeding. In its live pleading, WCW alleged TREIT breached the WCW Note by failing to pay the outstanding amounts owed under the WCW Note and Modification Agreement. WCW alleged its damages were the principal amount of $1,500,000 plus interest accruing at eighteen percent per annum from the date of maturity through the date of judgment. In its motion for summary judgment, WCW alleged the arbitration award conclusively established its damages for breach of note as a matter of law. WCW relied on the following findings by the arbitration panel:

> 77. Morkaram's [sic] damages are measured at the time of the foreclosure. Choudhri failed in his defense of mitigation of damages by his after the fact attempted rescission and return of equity into the property by conveyance deed into [TREIT] on February 21, 2021, being the last day of the arbitration hearing. It was his burden to show the amount of any equity returned (value of the Property on that date, less the amount of the debt on that date) and he failed to prove either. Experts on property value, Mr. Schultz, for Mokaram, testified he did

not have an opinion and Mr. LaGrasta, for Choudhri, did not offer an opinion of value on that date either.

78. The equity in the Property is the fair market value of the Property ($14 million), less the amount of the IBC Note, ($5,727,474.22), or $8,272,525.78. Although Claimants have argued that given Respondents' claim there is nothing owed on the WCW debt and Choudhri 's refusal to pay WCW a penny, and given Respondents' unlawful and fraudulent conduct, it would not be equitable to allow Respondents to ask and receive a credit against the equity for the WCW debt. To this point the Panel does not agree.

79. Evidence was presented that a credit for the WCW lien and federal lawsuit should be afforded Respondent consisting of two different amounts: $1.5 million and also pursuant to RX-65 the amount of credit was $3,650,990.05 were shown to be an equity of the Property which is the amount the disputed claim could have been settled for, if not for Choudhri's decision to orchestrate the wrongful foreclosure instead of acting in the best interests of [TREIT] (which obviously includes acting in accordance with the law). The Panel finds that $3,650,990.05 is the more credible credit to be given and so adopts this amount.

80. The Panel may grant any remedy or relief that is just and equitable and within the scope of the agreement of the parties, and the Panel has broad discretion in fashioning an appropriate remedy, including equitable remedies. The Panel believes that "justice requires" that Mokaram's claims in part are direct, and the derivative claims he asserted should be treated as direct claims, and finds that Mokaram may individually recover on all claims including the derivative claims. *See* Tex. Bus. Orgs. Code Ann. § 101.463(c).

As noted above, in seeking to invoke the doctrine of collateral estoppel, a party must establish three elements, the first of which is whether the facts sought to be litigated in the second action were fully and fairly litigated in the first action. *Petta*, 44 S.W.3d at 579. The issue decided in the first action must be identical to the issue in the second action. *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 802 (Tex. 1992); *see also John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002).

In the first action in this case, the arbitration between Mokaram and TREIT as plaintiffs and Choudhri and the Dalio Entities as defendants, the arbitration panel decided Mokaram and TREIT's damages for Choudhri's constructive fraud and the Dalio Entities' wrongful foreclosure. WCW asserts that, in calculating Mokaram's measure of damages, the arbitration panel necessarily had to determine TREIT's liabilities, which included WCW's breach-of-note claim. We disagree.

The general rule for measuring damages for breach of contract is "just compensation for the loss or damage actually sustained." *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991). In deciding what credit to allow for the WCW lien, the panel determined that the more credible amount was $3,650,990.05. The panel did not, and could not, determine the appropriate amount that would afford WCW "just compensation" for TREIT's breach of the WCW Note. The facts concerning WCW's breach-of-note damages were not fully and fairly litigated in the previous arbitration.

WCW asserts its damages were fully and fairly litigated in the arbitration because the parties were fully heard, the decision was supported with a reasoned opinion, and the decision was subject to appeal or was in fact reviewed on appeal. WCW relies on *Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991) and *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Services, Inc.*, 500 S.W.3d 26, 45 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). In those cases, the courts employed the factors to determine whether the earlier adjudication of an issue had an estoppel effect. In both cases, the issue sought to be relitigated was identical to the adjudicated issue. *Mower*, 811 S.W.2d at 562; *Better Bus. Bureau*, 500 S.W.3d at 45. Here, the arbitration panel in the prior case addressed TREIT's and Mokaram's damages for wrongful foreclosure of the IBC Note in addition to other claims. The arbitration panel did not address WCW's contract damages under the WCW Note.

We do not dispute that those elements were met; however, WCW ignores an essential element of collateral estoppel, i.e., that the issues be identical. *See Dewhurst*, 90 S.W.3d at 288. Because the issue of WCW's contract damages was not fully and fairly litigated in the arbitration, we cannot conclude that TREIT and the Dalio Entities are attempting to relitigate a factual issue decided by the arbitration panel. We therefore sustain that portion of appellants' third issue that asserts the amount of WCW's contract damages was not fully and fairly litigated.

## V. Summary judgment evidence does not support the trial court's finding of equitable subordination.

In another sub-part of appellants' third issue, they assert the trial court erred in granting summary judgment because WCW failed to conclusively establish it had a right to prevail on its wrongful foreclosure claim. Under this sub-part, appellants make two arguments: (1) WCW was not entitled to summary judgment on its wrongful-foreclosure claim because Dalio I's foreclosure sale was rescinded; and (2) WCW was not entitled to equitable subordination of Dalio I's lien.

Appellants assert on appeal that summary judgment on WCW's wrongful-foreclosure claim was inappropriate because, due to rescission of the foreclosure sale, WCW cannot demonstrate injury. WCW does not dispute that Dalio I rescinded its foreclosure sale, but asserts it is entitled to the relief of equitable subordination of Dalio I's lien.

Generally, available remedies for wrongful foreclosure are money damages or rescission of the sale. *Pinnacle Premier Properties, Inc. v. Breton*, 447 S.W.3d 558, 565 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Here, WCW asserts it seeks neither remedy, but seeks the remedy of equitable subordination due to appellants' fraud.

Equitable subordination is not a cause of action; it is a remedy. *See First*

18

*Heights Bank, FSB v. Gutierrez*, 852 S.W.2d 596, 613 (Tex. App.—Corpus Christi 1993, writ denied). This remedy is not available absent a finding that the party with a superior lien or claim engaged in false or inequitable conduct that conferred an unfair advantage on itself or injured third parties. *See Farm Credit Bank v. Ogden*, 886 S.W.2d 305, 313 (Tex. App.—Houston [1st Dist.] 1994, no writ) (equitable subordination not available because lien holder did nothing inequitable); *First Heights Bank*, 852 S.W.2d at 602, 604, 613 (bank's lien rights subordinated because its predecessor's president committed fraud); *see also In re Fabricators, Inc.*, 926 F.2d 1458, 1464–65 (5th Cir.1991) (applying equitable subordination to secured creditor's claims in bankruptcy proceeding).

Whether inequitable conduct has occurred sufficient to warrant equitable subordination is a fact question. *See In re Herby's Foods, Inc.*, 2 F.3d 128, 130 (5th Cir. 1993); *see also Grant v. Laughlin Envtl., Inc.*, No. 01-07-00227-CV, 2009 WL 793638, at *11 (Tex. App.—Houston [1st Dist.] Mar. 26, 2009, pet. denied) (mem. op.). To establish entitlement to this remedy, the injured party must prove conduct so inequitable that it "shocks one's good conscience." *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 668 (Tex. App.—Fort Worth 1998, pet. denied). Thus, a trial court's decision to subordinate lien rights under this doctrine must be based upon fact findings that inequitable conduct occurred and that the conduct was so inequitable that it warrants lien subordination. *Id*.

Although actual fraud generally need not be shown to obtain equitable subordination, cases in which no showing of fraud is required are generally bankruptcy cases involving insider misconduct. *See Herby's Foods*, 2 F.3d at 133–34 (insiders of debtor undercapitalized debtor, thereby harming unsecured creditors); *In re Multiponics, Inc.*, 622 F.2d 709, 715, 720–21 (5th Cir. 1980) (founder, director, and substantial shareholder of debtor engaged in inequitable conduct). The parties

have not cited, and independent research has not revealed, any non-bankruptcy Texas case in which a court has equitably subordinated lien rights absent a finding of fraud on the part of the superior lien holder or its predecessor. *See First Heights Bank*, 852 S.W.2d at 613 (jury found president of lien holder's predecessor committed fraud).

Therefore, in this case, to be entitled to equitable subordination, WCW must have presented conclusive evidence of appellants' fraud. *See World Help*, 977 S.W.2d at 669. The final summary judgment specifically granted summary judgment on WCW's breach-of-note and wrongful-foreclosure claims. WCW did not conclusively establish as a matter of law that appellants defrauded it. In its motion for summary judgment, WCW alleged the arbitration award conclusively established the elements necessary for equitable subordination, and the Dalio Entities are now estopped from claiming otherwise. The elements of fraud are: (1) a false, material representation; (2) that was either known to be false when made or was made without knowledge of its truth; (3) that was intended to be acted upon; (4) that was relied upon; and (5) that caused injury. *See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Intent is a fact question "uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986).

In the first proceeding, the arbitrators found that Choudhri's conduct constituted constructive fraud. Constructive fraud is the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship. *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964). Separate from fraud, constructive fraud does not require an intent to defraud. *New Bethel Baptist Church v. Taylor*, No. 14-22-00028-CV, 2023 WL 5550229, at *4 (Tex. App.—Houston

20

[14th Dist.] Aug. 29, 2023, no pet.) (mem. op.) (citing *Jean v. Tyson–Jean*, 118 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). Therefore, the arbitration panel did not decide whether the Dalio Entities intentionally defrauded WCW through Choudhri's conduct; the panel decided that Choudhri, not a party to this action, committed constructive fraud.

To invoke the doctrine of collateral estoppel, a party must establish that an issue decided in the first action is identical to an issue in the second action. *Dewhurst*, 90 S.W.3d at 288. The final arbitration award reflects that Choudhri "planned and orchestrated his fraudulent foreclosure scam to deprive [TREIT] and its members and creditors of the Property and its equity." The panel further determined that Choudhri's conduct breached his legal and/or equitable duties to TREIT, and his conduct constituted constructive fraud because of its tendency to deceive others, violate confidence, and/or to injure public interests. The panel further determined that Choudhri and the Dalio Entities conspired to commit constructive fraud. The arbitrators' finding of constructive fraud perpetrated by Choudhri is not identical to WCW's claim in this case that the Dalio Entities perpetrated fraud on WCW. The arbitrators made no finding as to the Dalio Entities' intent toward WCW.

The arbitrators' award is clear about the harm Choudhri and the Dalio Entities inflicted on TREIT, but the award does not conclusively establish conduct so inequitable that it "shocks one's good conscience." *See World Help*, 977 S.W.2d at 668. Because entitlement to the extraordinary remedy of equitable subordination is a question of fact, we sustain appellants' third issue.

In appellants' fourth issue they assert the trial court erred in calculating damages based on compound interest rather than simple interest. Having determined the trial court erred in granting summary judgment on WCW's breach-of-note damages, we need not address appellants' fourth issue.

## CONCLUSION

We affirm the trial court's summary judgment finding in favor of WCW on its breach-of-note claim except the amount of damages. We reverse the trial court's summary judgment finding of damages on WCW's breach-of-note claim and of equitable subordination of Dalio I's lien to WCW's lien. We remand to the trial court for proceedings consistent with this opinion.

/s/ Jerry Zimmerer
Jerry Zimmerer
Justice

Panel consists of Justices Jewell, Bourliot, and Zimmerer.